Vasquez versus Garland. Mr. Ahmad, you may proceed. Good afternoon, your honor. May it please the court. I'm here to represent Anna Vasquez in her application for relief. This case has been presented from an appeal from the BIA and the issues essentially revolve around whether there was ineffectiveness by prior counsel who represented Ms. Vasquez at the Merrick hearing as well as represented her at the BIA level and did a very minimal job in that representation and there was only a four page very scant brief written to the BIA addressing some very minimal issues. Mr. Ahmad, I don't want to tell you how to argue your case but that's not your problem. The question is jurisdiction and so can you tell us, talk with us about that and let me just kind of point you in a certain direction. This was an expedited or a streamlined appeal which was only heard by one BIA judge and the only final order in the case is the IJ's judge so what was contained in the IJ's findings has to do with one of credibility and it's number two that she offered evidence of corroboration whether he believed it or not but it was offered. Is that enough to get you by the BIA? I do believe it is, Your Honor. First of all, as far as the BIA level goes, we believe that it should have been a much more detailed brief that wasn't submitted. Unfortunately, it was the same attorney that represented her in the underlying case. I'm sorry, is that your way of agreeing that this ineffective counsel did not in fact this corroboration question before the BIA? Exactly, Your Honor. I mean, if this attorney had done the job properly at the IJ level, then he would have addressed it at the BIA but he was the same attorney and we do believe that a sense of reasonableness should be taken into account as to why it wasn't addressed. Corroboration wasn't addressed by that attorney at the IJ level and it wasn't addressed at the BIA level and it should have been addressed but given the scant argument that he made, I think it was a three page brief. So, if the exhaustion requirement wasn't satisfied, how are you here? Well, we filed the appeal for the petition for review and our argument is that the attorney who represented the respondent was the same attorney in the underlying case. Your entire argument is ineffective assistance of counsel, that is your entire argument? On the jurisdiction front, Your Honor, but we do believe that the case has significant merit once it gets beyond the jurisdiction issue. If she had had a competent attorney that represented her at the BIA level, all these issues would have been raised. Does our in-bank opinion in Flores help you with your exhaustion argument? I do believe it does, Your Honor. I mean, it does argue that because she wasn't given proper representation that this court in-bank is allowed to review the case as a whole and we do believe that that should be given some weight given the nature of the way she was represented, the limited scope of the testimony that was provided. The attorney didn't even address the affidavit that she had written or cross-examine as to many of the issues. There was also psychological evaluations that were not provided into the IJ that should have been provided and again these issues were never raised at the BIA. We do concede that those issues were not raised at the BIA but given the fact that it was the same attorney that speaks volumes as to why he didn't raise issues about his own ineffectiveness. We do believe that this court should look at the case in-bank and look at the merits of exactly why. And wasn't the, I mean the IJ's reason for a justification for requiring cooperative evidence was the IJ's view that the petitioner was inconsistent in her statements and the IJ was wrong about that, right? She was not inconsistent in her statement that she feared returning to El Salvador, right? That helps you, doesn't it? It does, your honor. We didn't see where the IJ was inconsistent in her testimony. I mean the IJ indicated. No, not that the IJ was. Okay, go ahead. I mean I meant the petitioner. Right, so the IJ's perception about that was incorrect and then when the IJ based his or her perception on an incorrect view of the record, we have an obligation, don't we, to to correct that or at least remand it so that the BIA can have an opportunity to correct it in the first instance. Exactly, where the IJ makes a improper finding or inconsistent. We believe this case should be remanded and the IJ did make a finding that she did not corroborate her testimony. It was inconsistent, but I did not see that in the testimony she had provided. In fact, the opposite is true. She consistently said she did fear returning to El Salvador, correct? She did from the very beginning. In her reasonable fear interview, she did also. She even sought psychological help when she arrived here. We believe her testimony has been consistent throughout the process, beginning up until their hearing. Counsel, I just want to make sure, so your position is just sort of a clear IJ error is something we should sort of notice and remand on even if it was not brought to the attention of the BIA. It was not exhausted, but we should do it anyway. Yes, in this particular situation. Okay, and then my second question is, did you argue that in your brief on appeal? Will I find that somewhere in your brief? In this brief, yes, it's argued under the last section, under the ineffectiveness section. No, your ineffectiveness section is just sort of a separate, there's an ineffectiveness, but I'm just looking for an argument that there's sort of an exception to our exhaustion rules. If there's a really obvious mistake, we should just fix that even if it's not exhausted. Is that, I didn't see that you address, it doesn't matter. Can I ask, is there a reason why if you think counsel was ineffective, you didn't file a motion to reopen before the BIA based on ineffectiveness? That's the customary procedure. Your Honor, that is correct, but the problem we had was that we were brought on as attorneys within the 30-day window to file the petition for review. We did not have access to the record. The client did not have the record with her. We had no way of knowing at that time what the errors were that were made by the IJ or the counsel until we received the whole record. We didn't get the whole record until well into the petition for review process. I'll ask your colleague about that. I'm sorry, Your Honor. But I think it's customary under those circumstances to seek tolling, equitable tolling of the 30-day deadline given the ineffective assistanceness and that the BIA will at least consider that. Is that not right? It is right if we have some solid ground as to the effectiveness. We didn't get to that point until I received the entire record, which was months later after the petition for review was submitted. And that's essentially why it was not raised or a motion to remand or reopen wasn't filed because by the time we got the record, we were well into the procedure of the petition for review at that point. Can you? I'm also trying to understand your exhaustion argument. Can you, for me at least, make your exhaustion argument in the context of our Flores decision? In the context of Flores, essentially, we believe that if a reasonable explanation is not provided, I think the case we cited is very risk and balance, where if there is a reasonable explanation as to why the courts did not, as to why we didn't proceed with Lozado, based on that, we believe that this court has jurisdiction if it believed that there's a reasonable reason why the proper channels weren't followed for ineffectiveness. For example, following Lozado, filing a motion to reopen, based on those grounds, we believe that there is a jurisdictional avenue here to review the case on bond. Mr. O'Malley, do you have to concede exhaustion in this case based upon what was contained in the IJ's order and the language that he used about corroboration and consideration? Is that right? It is right to the extent that it's raised in the brief, but if the attorney who represented the respondent doesn't raise it at the PIA level, the PIA can rubber stamp it, which is what they did. Yeah, but I'm not talking about the brief. In these streamlined cases, all they have to do is to file a notice of intent to appeal. They don't even have to file a brief. So, you filed a notice of intent to appeal, and this was a single BIA judge, and the only final order in this case is the IJ's order. Does that not help you out, or does it hurt you? Help me out. I mean, I think it does help out, because then we're looking at the IJ's decision, and the IJ's decision, we believe that there were clear errors. There was a cognizable particular social group which was not addressed. The IJ found there was no social group. We believe that it was addressed. The IJ found that her testimony was not credible or contradictory. We believe, again, that it was streamlined, and her testimony was in line with what she had said from the very beginning. So, based on those arguments, we believe that this entire IJ decision should be overturned, and the case should be viewed as unbound at this point. Do you have anything further, Mr. Ahmad? No, Your Honor. That's it. You have some time. The panel does not have any questions, and you have some time in rebuttal. Mr. Pennington. Thank you, Judge Floyd, and good afternoon. I'm Greg Pennington for the Attorney General. So, Petitioner's Counsel has conceded that there was no exhaustion in this case. So, the court just—the decision in this case should be simple. The court lacks jurisdiction to review unexhausted arguments. It's held that for well over a decade that there is no exception for a gross miscarriage of justice. I think that kind of goes to Judge Harris's question earlier, whether there's an exception to the statutory exhaustion requirement. And the court held in kind of gross miscarriage of justice exception to fix obvious errors that the IJ might have committed when those errors were not brought to the board, to give the board the chance to correct those errors. That's the whole point of exhaustion, is respect for the agency to allow it to work its way through the process and correct any internal errors before getting the judiciary involved. And the brief to the board, as Mr. Ahmad also noticed, was defective. I mean, there is just simply no argument. But the proper course for that is to file a motion to reopen, pursuant to matter of lazada. Didn't Flores hold that specific arguments subsumed within an issue need not necessarily be raised for the issue to be exhausted? And if so, why does it matter if the petitioner's arguments in her brief to the CIA were conclusory, provided that the issue, the overarching issue was raised? So even under that circumstance, there still has to be some sort of exhaustion, putting the board on notice that I'm raising this argument, even if something might be contained within it as a narrower argument, I'm putting you on notice to give you the chance to answer it. But this court has also held in corpore, I believe I'm pronouncing that right, that there is no exhaustion by proxy. So you can't say I'm appealing the asylum, but I'm not, you know, and say nothing about withholding of removal or the Convention Against Torture. That doesn't exhaust claims regarding withholding of removal or the Convention Against Torture. So we don't have in this circuit, we don't have a case that I'm aware of that says you can't consider a claim within a claim. And so if she raised the asylum issue to the BIA, and there's this claim within, why can't we consider that? Well, because the claim, even if you're operating under, where you can consider a claim that's within an exhausted claim. So say, I am challenging the immigration judge's finding that my group was not a particular social group. And the immigration judge's finding was on that particularity. That might be sufficient to exhaust. But if you look at the brief that was submitted to the board here, there was just nothing said. There were three sentences that could be construed as arguments, and I use that term lightly, that said, Ms. Vasquez experienced harm that rose to the level of persecution. The immigration judge did not deal with whether she experienced harm that rises to the level of persecution. So that doesn't exhaust anything or anything that could be consumed within that. Her second argument was that the police, or the government of El Salvador, was unable or unwilling to protect her from this gang member. But the immigration judge didn't make that finding either. So there's nothing that could be subsumed within that. And her final assignment of error was that she was targeted based on her And even if that could be considered to, yes, go ahead, Judge Harris. Counsel, so I totally, I understand what you're saying about the brief, but I thought, and maybe I misunderstood the question, but I thought Judge Floyd's question was, do we, why isn't it enough that at least asylum is exhausted? The brief may not have tagged torture or withholding, but it did say asylum. And so is it possible that just by saying asylum, you've now exhausted any argument that bears on your eligibility for asylum, or do you think that is just too broad? We have never gone quite that far. I do not read any of this court's decisions as going that far. That would kind of give to the vice that exhaustion is designed to cure, is you got to put the board on notice of the arguments are. You can't just file a notice of appeal and say, I appeal the denial of asylum and then not file a brief and then come to this court and say, well, the denial of asylum was erroneous because A, B, C, D, and list all of your assignments of error, because you never really gave the board the opportunity to cure any errors because you didn't put the board on notice of those errors. And your view is that would be the same, the same exhaustion rules apply in this kind of a summary proceeding or summary appeal, whatever it's called, as they do in a normal appeal? Yes. I would first note that petitioner hasn't challenged whether exhaustion was required. So this case would be a bad vehicle to really address that because there hasn't been any arguments really fleshed out. But it would apply because, and I would point the court to the Ninth Circuit's decision that I cited, I think it's Zuru, that streamlining kind of might be influenced based on the arguments presented in the brief. So the regulations on streamlining allow for a streamlined decision in several different scenarios, one of which is where the arguments raised on appeal are so insubstantial as to not warrant a written opinion. So the board might see this four-page brief that doesn't challenge any of the immigration judge's findings and say, we don't really need to write an opinion here because they haven't challenged anything on appeal. So that might... I want to go back to your statement about membership in a particular social group. In her challenge to the denial of asylum, there is language that the holding that the respondent did not meet the requirements to show membership in a particular social group is erroneous. She did raise that before the BIA, didn't she? You would have to construe her brief liberally. How liberal do you have to be when the plain English says, do not meet the requirements to show membership in a particular social group is erroneous? How much plainer do you have to be? Well, I think that the brief to the board needs to put the board on notice as to what part does the petitioner believe that the immigration judge erred in finding that she wasn't a member of her own proposed group or that the immigration judge's finding on particularity was erroneous or a social distinction or the whole shebang. Is it all bad? The board just has no way to know. And a generalized statement like that should not be sufficient to exhaust a claim in any circuit, much less under this court's jurisprudence, that a petitioner must raise every argument before they raise that argument in the court of appeals. So I understand what you're saying, but then I would go and say that, OK, even assuming she exhausted the asylum particular social group, she says nothing about nexus in that brief to the board. She says nothing about corroboration in that brief to the board. So both of those, even if we accept that she challenged a particular social group and she exhausted this one thing, and we can look at the immigration judge's decision on the cognizability of the social group, she still has not exhausted corroboration, which is dispositive for failure to meet a burden of proof. And she has an exhausted nexus, which is also dispositive. Well, doesn't Clausey say that we have a responsibility to ensure that unrebutted, legally significant evidence is not arbitrarily ignored by the fact finder? And here the IJ just got things wrong in terms of his or her justification for requiring corroborating evidence in terms of finding that she was able to avoid the gang for almost four years, when in fact she said that she received frequent visits from the gang during those four years. There are a number of other things that the IJ just got wrong. Is that there's some obligation to at least remand it for the PIA to consider that in the first instance? First, I agree, Judge Thacker. There are several things in this immigration judge's decision that I would not say are correct or I would not stand here and defend. But there is a proper recourse for Ms. Vasquez. And it's a motion to reopen to raise claims of ineffective assistance to counsel, which would also allow her to make arguments that she was prejudiced by that. Has the time passed for a motion to reopen? The statutory time probably has passed. So she has as a matter of right. So exhaustion under 1252 D1 requires exhaustion of administrative remedies as a matter of right. There is a statutory right to file a motion to reopen within 90 days. And now I understand Mr. Ahmad's argument that he did not have the record and this petition was already ongoing. But I would point the court to the Supreme Court's decision in Stone v. INS, which recognized that there are two separate paths. There is the petition for review of the final order of removal. And then the non-citizen can also file a motion to reopen or a motion to reconsider and let that play out before the agency. And then the statute explicitly contemplates the court combining those two petitions for review into one. So he wasn't prevented or she wasn't prevented from filing a motion to reopen. She could have filed the motion to reopen, requested an extension for a briefing on the motion to reopen until she had the record. I believe the record was filed within 40 days of filing of the petition for review, which was filed within 30 days of the court's decision. I would imagine that still would have left time to file a motion to reopen. Why doesn't the government have some interest in the immigration courts getting the facts right before they make these decisions? Why isn't the government interested in correcting the record that even it admits the IJ was incorrect on here, on some of the facts? Right. So I agree that some of the facts are, and I even mentioned some of them in my brief, that some of the facts are just wrong. But the board's decision in this case should be the final order of removal. And when the board uses the streamlining process, it doesn't imply in the regulation explicitly provides that it's not approving of the reasoning of the immigration court for the Department of Justice. So I don't understand why the Department of Justice isn't like the petitioner interested in making sure that the court gets the facts straight before it makes a final decision. You don't want to, if this was a criminal case, you certainly the government wouldn't just stand there and let the court get the facts wrong and then face a conviction or a sentence on incorrect facts, would it? No, and I agree that the goal is to seek justice, but here the outcome is correct. Despite the factual misfindings of the immigration judge, the ultimate outcome is correct. And I've set forth the reasons in my brief why that should be. So how do we know? I thought you said that the BIA, the petitioner's brief was so conclusory that it didn't raise anything. How did the BIA, was the BIA aware of all these incorrect facts since the brief was so conclusory? I don't know how much the BIA would read into a record when it's faced with a brief like that. And we don't know what part, because the BIA, when it issues a streamlined decision, says it agrees with the ultimate outcome, but we don't know what in particular it agreed with. Did it agree with the corroboration finding? Because, you know, petitioner does not challenge that even here, that she failed to corroborate with any letters from her husband who she lived with in Mexico or her parents who she said this gang member came by her house after she left. The government agrees that the basis for the corroboration finding was the IJ was incorrect. Right? No. When the IJ found justification for the corroboration, requiring corroboration, the IJ found that justification based on the fact that the IJ had an incorrect understanding of the record and thought that she had been inconsistent in expressing her fear of returning to El Salvador. And that wasn't accurate. And the government knows that that is not accurate. It's in black and white. She was inconsistent. She didn't, she was inconsistent in why she said or what happened to her. She was consistent in saying that she didn't, that she feared going back to El Salvador, but she was inconsistent saying what happened to her in El Salvador and what formed the basis of that fear. So that's, there were several statements she made. But counsel, it doesn't, it doesn't really matter, right? Because you have conceded that the IJ erred in requiring corroboration without first making the reasonable availability finding. So one way or another, we can, I think we all agree, and this is in your brief, the IJ got it wrong in requiring corroboration. You know, we'll put to one side the reading of the record, but she didn't do the reasonable availability inquiry under WANBUR. So that's wrong. I thought your argument was forget corroboration. Maybe all of that is wrong. There's still no particular social group on this record. Like there's just no way around that. So the outcome is correct. No matter what you think of corroboration, there are two alternative holdings here. And I thought the one that you were defending on the merits was the particular social group one. No? Well, I'm defending all of them on the merits. I mean, the court should not get past subject matter jurisdiction to review any of these. That's the government's first position. The court simply lacks jurisdiction. She still has an avenue. I know, but we're in the part of argument now where you are arguing, look, anyway, they got this one ultimately right. So I just wanted to sort of press on what is your ground for saying that, given that I think I read your brief correctly, that you were conceding at least the procedural error in requiring corroboration without first finding that it was reasonably available. That's correct, Judge Harris. So I would still defend the corroboration based simply on the failure to challenge it within the court. We still have to have, you know, party presentation of error. Oh, I'm sorry, the failure to present it before this court. Yes, Judge Harris. I appreciate Judge Harris's question in trying to get you beyond corroboration because I need some help understanding your argument beyond the corroboration because I don't agree with your argument on corroboration. So she's trying to help you. This is one of those examples, I think. Well, maybe not. She's trying to help me, perhaps. And I shall move on at your recommendation. So, yes. So the immigration judge made several findings in addition to corroboration. One of them is that she has not established a viable particular social group for three separate reasons. First, that she didn't show she was a member of her own particular social group. It wasn't immutable for her because she didn't demonstrate that she was controlled or treated by property by this gang member. And there isn't record evidence to compel a different finding. According to her testimony and declaration, she was the unfortunate victim of this rape where she was drugged. I don't know the circumstances, but they gave her a Coke that was drugged. She was raped. She didn't remember it. She doesn't know who did it for sure. She woke up. And then the next incident, I mean, she makes this generalized statement that they would harass her, but she doesn't say what that means. But the next incident didn't happen until four years later. So over those four years, she wasn't even a member of her own group of women who are treated as property and control. I mean, she did actually give several examples of how they harassed her, though. Yeah, I mean, you said she didn't, but she did. She said they would just pass by in front of me all the time and they would laugh and say, like what we did to you. Frequently asked her if she was going to surrender herself to them, demanded that she turn herself over to them. And they asked who was the father of my son, that sort of thing. Visit her frequently. So they she did give several examples of how they harassed her. That is correct. But whether that meets what would be a controlling or treated as property, I think the reason I understand that argument, I was just responding to your statement that she didn't give any examples of how she was harassed. She did get several. She did in her statement. I do. I do recall that. And the second reason was particularity. She didn't set forth a group with discrete boundaries. So we don't know who is in and who is out. Her group is women who are in petition as it doesn't offer what it means to be treated as property and controlled by men. And finally, social distinction, which requires evidence on country conditions. And I see my time's up. I didn't get to nexus or the Convention Against Torture claim, but both of those two are supported by substantial evidence. We would first ask the court to dismiss the petition for review for lack of jurisdiction for failure to exhaust or in the alternative to deny it. Thank you, Mr. Ahmad. I mean, I'm sorry, Mr. Ahmad, you have some time in rebuttal. Thank you, Your Honor. I did want to address some of the issues raised by counsel. I think Judge Floyd asked several questions about what was in the BIA brief that was submitted by her attorney. Looking over that brief, obviously they're not the best of arguments, but as the court mentioned, she does, on page two of the brief, it does say the judge erred as a matter of law as far as credibility. Whether it's established or not or discussed in detail, that is not there. On page three, the argument for asylum is made. On page four, an applicant and a membership in a particular social group must establish. Now, did the attorney fulfill this and go in more detail? Certainly, that is not there, but these issues are raised. Now, the question is, once an issue of asylum is raised or an issue of membership in a particular social group, we believe that that falls under the umbrella of whether she met the criteria for asylum or withholding of removal. I believe if the attorney has raised those issues, then they should be addressed at this point. Concerning the- Wait, so counsel, just so I understand, so your view is that if the brief says asylum, it's up to the BIA to sort of independently figure out whether the IJ got anything wrong that touches on asylum. It doesn't have to be any more specific than that. I definitely take your point about, look, she said particular social group. That was enough to put the BIA on notice. Bear down on what the IJ did with respect to a particular social group. But your view is that wasn't required. Same answer, if the brief had said one word, asylum. If the brief says asylum, BIA is on notice, you need to check every single component of the ruling on asylum. I do believe so. I do believe that if- Do we have any case that says that, that the word asylum or alternatively withholding, or I guess torture, is sufficient to incorporate to subsume every possible argument that could be raised under one of those? That it's enough to say the form of relief you want. What if you just say removal? I'm not removable. What are we supposed to do? And I guess one of the reasons I'm asking is because similar rules apply on appellate review of district court cases. And I'm suddenly wondering if somebody says, my sentence is not legal. Like, am I now as an appellate judge supposed to figure out any possible ground on which a sentence might be illegal? Is it enough that they said sentence? No, Your Honor. No, Your Honor. I mean, certainly, it has to be more than just a word or a phrase. In this situation, he does talk about that she had established a well-founded fear. She'd established corroboration. There was some arguments made. So it wasn't just the saying that it is enough to say the form of relief. You're saying that more was said here. I really am just trying to figure out what is your argument. Certainly, more was said. And I believe it is enough to open those areas. He didn't just say the word asylum. He talked about that she didn't have a well-founded fear. She didn't belong to a social group. OK. Can I ask you a question about the particular social group? This is the part that confuses me. And I understand, just hypothetically now, we're over on the merits. So as I understand it, the petitioner is not arguing anymore that rape victims is a particular social group. And this was conceded before the immigration judge because it's circular. You're sort of defining the particular social group with reference to the act of persecution, the rape. But what I don't understand is how women treated as property and controlled by men is any different the way it's being presented here. Because her argument is, I'm part of a social group of women treated as property and controlled by men because they have been raped. That is why I am treated as property and controlled by men. And so I don't see how it's not circular in the same way. It still boils down to it's your status as a rape victim that is the source of your persecution. Your Honor, I think it helped the situation. It went beyond just the fact that she was raped. She was raped. She had a child who is now the child of a gang member. And on numerous occasions, she was harassed by the same group and threatened that you're one of us or you're a girl that belongs to us. Even when she went to- Because she had been raped. I mean, what she says is because I was raped, they harassed me and treated me as their property. Because she was raped and also because she had a child as a result of the rape. As a result of the rape. Right. So I guess I'm having trouble distinguishing this from the first category, which is just women who are rape victims. Women who are raped by the gang. And I know I sound very callous in talking about this. And I sort of apologize for that. But I am looking for an answer as to why these two particular social groups aren't basically the same thing. Yeah. I think the reason is because as an individual who's harassed over time, over a four-year period, even after four years out in 2014, a knife was held to her and again told her that this is what's going to happen to you if you don't do what we say. So this continued action wasn't just a one-time incident. It went over 40 years. And as the other judge mentioned, there was harassment throughout that four-year period. She was known as the property. And I believe the information we provided on evidence, I don't have the exact record pages, but it does talk about how women are treated as property who have been threatened by gangs or raped by gang members. And the history after the rape is what makes us different than just an individual who's a rape victim. If your treatment for the next four years and the eventual culmination of the incident involving a knife to the throat and they're going to cut her son's head off, this is not a random incident. She's part of a group, a group of women that are treated as property belonging to this gang of individuals and was raped by one of those gang members. And I think that's where the difference is between her and just women who are raped by or victims of rape. All right. Anything further? Thank you, gentlemen. Through. Okay. Thank you very much for your arguments today. And as you know, our customers to come down and shake your hands and greet you after all four arguments when we're in Richmond, but unfortunately it's virtual and we can't do that. So we still thank you very much. You can accept this as a virtual handshake. Thank you. Have a good day.
judges: Henry F. Floyd, Stephanie D. Thacker, Pamela A. Harris